UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00059-LLK

STACY L. CURTIS     PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security     DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets 17 and 20. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. Docket 13.

Because the administrative law judge's (ALJ's) decision was supported by substantial evidence in the administrative record and was in accord with applicable legal standards, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

### Discussion

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because: 1) The decision failed to acknowledge her "severe," or vocationally significant, post-traumatic stress disorder (PTSD) and vasovagal syncope[1]; 2) The vocational expert (VE) failed to identify a significant number of jobs in the national economy that Plaintiff can perform; and 3) Plaintiff suffers from a spinal disorder satisfying the medical criteria of Listing 1.04(A) of Appendix 1 of the regulations.

---

[1] Vasovagal syncope, or neurocardiogenic syncope, is the body's response to a trigger, such as fear, anxiety, or emotional upset. The vagus nerve, which is a cranial nerve and part of the autonomic nervous system, may become stimulated, thereby reducing heart rate and lowering blood pressure. The result may be loss of consciousness or fainting. See Ellison v. United States, 2011 WL 13136515 (E.D.Pa.).

**The ALJ did not err in finding non-severe vasovagal syncope.**

A "severe," or vocationally significant, impairment is any "medically determinable physical or mental impairment[2] that meets the duration requirement in § 404.1509[3]" that "significantly limits your physical or mental ability to do basic work activities[4]." 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c).

Plaintiff has not identified evidence in the administrative record of a medically-determinable, or diagnosed, vasovagal syncope and, even if she had, she has not shown that the impairment significantly limits or limited her ability to do basic work activities for a period of time satisfying the duration requirement.

In December 2014, Amir Zia, M.D., Director of the Autonomic Lab, performed testing of Plaintiff's sympathetic adrenergic and parasympathetic autonomic nervous system and found that the results were "essentially normal," with "no evidence of … neurally-mediated (neurocardiogenic or vasovagal) syncope or an exaggerated postural tachycardia." Administrative Record (AR), p. 180.

The first mention of vasovagal syncope was in April 2014. Plaintiff was treated for lightheadedness, mild chest pain, and arrhythmias. Sandeep Gautam, M.D., said that he "believe[d] that [Plaintiff] has vasovagal presyncope, exacerbated by anxiety." AR, p. 871. Dr. Gautam explained that the condition was "benign" and that Plaintiff needed to maintain adequate hydration, completely avoid caffeinated drinks, and make postural adjustments to prevent syncope. Id.

In April 2014, Plaintiff completed a health questionnaire indicating that she had been diagnosed with vasovagal presyncope. AR, p. 902. While there are treatment notes listing vasovagal syncope /

---

[2] A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." Section 404.1508.

[3] Section 404.1509 provides that: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."

[4] "Basic work activities means the ability and aptitudes necessary to do most jobs. Examples of these include -- (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and(6) Dealing with changes in a routine work setting." Section 220.102(b).

presyncope as a diagnosis or noting that it was a "problem" (AR, pp. 103, 137, 912, and 916), it appears that the notes were based on Plaintiff's self-reporting.

Like the diagnosis, the alleged prescribed limitation of having to lie down and elevate her legs appears to be based on self-reporting. In May 2014, Plaintiff "state[d] [she] saw Cardiologist for results of cardionet and was told that she had vasovagal presyncope -- encourage to drink fluids, put legs up and move lower extremities frequently." AR, p. 912.

Plaintiff has failed to show that she suffers from "severe" vasovagal syncope requiring her to lie down and elevate her feet so frequently as to significantly limit her ability to do basic work activities. Compare Leffel v. Commissioner, 30 Fed.Appx. 459, 461 (6th Cir. 2002) ("The problem with Leffel's argument [that he has to lie down every day for several hours] is the fact that the record below contains no medical evidence describing such limitation").

Alternatively, any error in not recognizing that Plaintiff suffers from severe vasovagal syncope was, at worst, harmless error because the ALJ's RFC finding, adequately took into account the limiting effects of that impairment. See Maziarz v. Secretary, 837 F.2d 240, 244 (6th Cir. 1987) (If the ALJ considered the limiting effects of all severe and non-severe impairments as a whole, the ALJ's failure to label a non-severe impairment as "severe" was, at worst, harmless error) and McGlothin v. Commissioner, 299 Fed.Appx. 516, 522 (6th Cir. 2008) (It is "legally irrelevant" that the ALJ found an impairment to be non-severe because he acknowledged other severe impairments and completed the evaluation process).

The ALJ's decision found that Plaintiff is limited to sedentary work and must avoid climbing ladders, ropes, or scaffolds; using vibrating objects or surfaces; exposure to extreme temperatures; or to hazards such as dangerous, moving mechanical parts or machinery and unprotected elevations. AR, p. 195. Plaintiff has failed to prove that any vasovagal syncope-like symptoms she experiences require greater restriction.

**The ALJ did not err in finding non-severe PTSD.**

Plaintiff persuasively argues that she suffers from severe PTSD due to dreams and flashbacks of being abused as a child. While, ideally, the ALJ's decision should have specifically listed PTSD among her "severe," or vocationally significant, impairments, it is sufficient that the list included severe "affective disorder and anxiety disorder." AR, p. 194.

Alternatively, not listing severe PTSD was, at worst, harmless error. See Maziarz and McGlothin, supra. The ALJ recognized that Plaintiff has been diagnosed with PTSD and that she suffers flashbacks. AR, pp. 195 and 195. The ALJ found that Plaintiff is restricted to unskilled work requiring little to no judgment to perform simple duties, tasks that are routine and repetitive with no more than occasional changes in work processes, and that involve no interaction with the public and only occasional, episodic interaction with coworkers and supervisors. AR, p. 198. Plaintiff has failed to prove that her PTSD requires greater restriction.

**The VE identified a significant number of jobs.**

The ALJ found that Plaintiff is able to perform the following jobs: 1) Mail sort clerk, Dictionary of Occupational Titles (DOT) 209.587-010, 120,000 such jobs in the national economy and 500 in Western Kentucky; 2) Clerical sorter, DOT 209.687-022, 60,000 nationally and 200 regionally; and 3) Optical assembler, DOT 713.687-018, 30,000 nationally and 100 regionally. ALJ's decision at AR, p. 201; VE's testimony at AR, pp. 242-243.

Plaintiff argues that these 210,000 jobs in the national economy and 800 jobs in Western Kentucky do not constitute a significant number of jobs in the national economy.

The Social Security Act defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where [Plaintiff] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). Judicial review often focuses more on the less Plaintiff-favorable "several regions" part of the definition. See, for example, Harmon v. Commissioner, 168 F.3d 289, 292

(6th Cir. 1999) ("[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy -- not just a local area") and Taskila v. Commissioner, 819 F.3d 902, 905 (6th Cir. 2016) (Disability benefits are "not available to fund [Plaintff's] decision to live far from his job"). Similarly, the regulations state that, in the final analysis, "[i]t does not matter whether … [w]ork exists in the immediate area in which you live." 20 C.F.R. § 404.1566(a)(1).

Admittedly, 800 jobs in Western Kentucky (the region where Plaintiff lives) reflect a relatively low number of jobs. It is, however, sufficient that 210,000 jobs constitute a significant number of jobs in the national economy. See Taskila, supra (finding that even 6,000 jobs nationally "fits comfortably within what this court and other have deemed 'significant'").

**Plaintiff does not suffer from an impairment satisfying the Listing.**

Plaintiff is entitled to a conclusive presumption of disability is she shows medical evidence satisfying the medical criteria of any impairment listed in Appendix 1 of the regulations (the so-called Listing of medical impairments). Because the Listing represents an automatic screening-in of an impairment as per-se disabling (regardless of any other factor such as age, education, and prior work experience), Plaintiff's burden of proving that the criteria of the Listing are satisfied is construed strictly. See Secretary v. Zebley, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [a Listed impairment's] criteria, no matter how severely, does not qualify").

To satisfy Listing 1.04(A), Plaintiff must show that she suffers from a disorder of the spine (for example, spinal arachnoiditis, spinal stenosis, or degenerative disc disease) along with each of these elements:

> Evidence of nerve root compression characterized by[:] [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) [4] accompanied by sensory or reflex loss and [5], if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

In this case, factor [5] is inapplicable because Plaintiff alleges (not a lower-back impairment but) a cervical spinal disorder affecting her upper extremities, specifically, spondylotic changes with right neuroforaminal impingement with bone spurs at C5-C7.  AR, pp. 622 and 841.

Plaintiff argues that factor [1] is satisfied due to pain radiating from the right neck to the right arm, paresthesia in the hands, and numbness and tingling in digits 4 and 5 of the left hand.  AR, pp. 572, 827, 838, 871, and 876.  She argues that factor [2] is satisfied due to significant pain with cervical spine motion in extension and rotation and cervical motion to the left resulting in increased pain in the C7 dermatome of the left arm.  AR, p. 841.  She argues that factor [4] is satisfied due to decreased sensation of digits 4 and 5 of the left hand.  AR, p. 871.

Regarding the remaining factor [3], Plaintiff concedes that the evidence before the ALJ did not satisfy factor [3].  Her position is that evidence first submitted to the Appeals Council satisfied factor [3].  See Plaintiff's fact and law summary, Docket 17, p. 6 ("At the time of the administrative denial in September 2014, there did not appear to be clinical evidence supporting motor loss of the upper extremities.  However, the Plaintiff submitted evidence to the agency's Appeals Council showing that the Plaintiff did, in fact, have diminished strength at the time of the unfavorable decision").

The evidence Plaintiff relies on as satisfying factor [3] is at AR, p. 96.  In October 2014, physical therapist Dewayne Miller performed a Physical Therapy Initial Examination measuring Plaintiff's range of motion, strength, neuro-vascular tests, special tests, and palpation.  Id.  Under the category of strength tests, Mr. Miller noted that upper extremity (UE) manual muscle tests (MMTs) revealed a strength of +4/5 on the right (R) and 5/5 on the left (grossly).  Id.  The MMT Testing Grading System indicates that a 4 corresponds to full range of motion (ROM) against gravity with moderate resistance, and a 5 represents full ROM against gravity with maximal resistance.[5]  These findings do not reflect "motor loss

---

[5] http://highered.mheducation.com/sites/0071474013/student_view0/chapter8/manuaul_muscle_testing.html

(atrophy with associated muscle weakness or muscle weakness)" as required by factor [3] of Listing 1.04(A) to entitle Plaintiff to a conclusive presumption of disability.

Additionally, even if the evidence from Mr. Miller would otherwise satisfy the Listing, a physical therapy report is not afforded significant weight because "a physical therapist is not recognized as an acceptable medical source." Nierzwick v. Commissioner, 7 Fed.Appx. 358 (6th Cir. 2001) citing Walters v. Commissioner, 127 F.3d 525, 530-531 (6th Cir.1997).

The Court is authorized to consider evidence not before the ALJ only for the limited purpose of determining whether to grant a remand to the Commissioner for consideration of new and material evidence pursuant to Sentence 6 of 42 U.S.C. § 405(g). Cline v. Commissioner, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is material only if there is a "reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Secretary, 865 F.2d 709, 711 (6th Cir. 1988).

In this case, the evidence is immaterial because it does not satisfy factor [3] of the Listing.[6]

**ORDER**

The final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED.

---

[6] The Court does not reach the Commissioner's position that Plaintiff has failed to allege or show good cause for late submission of the evidence.